**EXHIBIT  C**

CHAMBERS

1   LERACH COUGHLIN STOIA GELLER
      RUDMAN & ROBBINS LLP
2   SHAWN A. WILLIAMS (213113)
    100 Pine Street, 26th Floor
3   San Francisco, CA  94111
    Telephone:  415/288-4545
4   415/288-4534 (fax)
    shawnw@lerachlaw.com
5
    LERACH COUGHLIN STOIA GELLER
6     RUDMAN & ROBBINS LLP
    SAMUEL H. RUDMAN
7   ROBERT M. ROTHMAN
    MARK S. REICH
8   58 South Service Road, Suite 200
    Melville, NY  11747
9   Telephone:  631/367-7100
    631/367-1173 (Fax)
10  srudman@lerachlaw.com
    rrothman@lerachlaw.com
11  mreich@lerachlaw.com

12  Attorneys for Plaintiffs

13  [Additional counsel appear on signature page.]

14                                                              MJJ

15                    UNITED STATES DISTRICT COURT

16              NORTHERN DISTRICT OF CALIFORNIA     C 07 3880

17  NANCY and JOHNNY JEFFRIES on Behalf  )    Case No.
    of Themselves and All Others Similarly    )
18  Situated,                                 )    CLASS ACTION COMPLAINT
                                              )
19                    Plaintiffs,             )
                                              )
20          vs.                               )
                                              )
21  WELLS FARGO BANK, N.A., and              )
    MORTGAGE DIRECT, INC.                     )
22                                            )
                    Defendants.               )
23  _____ )

24

25

26

27

28

1    Plaintiffs, Nancy and Johnny Jeffries ("Plaintiffs"), on behalf of themselves and all others
2    similarly situated, by their undersigned attorneys, allege as follows:

3    1.    This is a class action brought by Plaintiffs, on behalf of themselves and other
4    similarly situated black homeowners, against Wells Fargo Bank, N.A., ("Wells Fargo") and
5    Mortgage Direct, Inc. ("Mortgage Direct") (collectively "Defendants"), under the Equal Credit
6    Opportunity Act, 15 U.S.C. §1691, *et seq.* ("ECOA") and the Fair Housing Act, 42 U.S.C. §3601 *et*
7    *seq.* ("FHA"). Plaintiffs seek remedies for themselves and the Class (defined in ¶¶9-17, below) for
8    the impact or effect of Defendants' discriminary home financing policies and practices.

9    2.    As alleged below, Defendants have established a specific, identifiable and uniform
10   credit pricing system, a component of which authorizes an unchecked, subjective surcharge of
11   additional points and fees to an otherwise objective risk-based financing rate (the "Discretionary
12   Pricing Policy"). Meaning, after Defendants decide on an acceptable finance rate as determined by
13   objective criteria (*e.g.*, the individual's credit history, credit score, debt-to-income ratio and loan-to-
14   value ratios), Defendants' credit pricing policy authorizes additional discretionary financing charges
15   and interest mark-ups. These subjective, additional finance charges, in violation of the ECOA and
16   the FHA, have a widespread discriminatory impact on black applicants for home mortgage loans.

17   3.    Defendants established policies for access to their loan products in a manner which
18   subjects black applicants to a greater likelihood of assessments of discretionary points, fees and
19   interest mark-ups. These costs significantly increase the average cost of a mortgage loan made by
20   Defendants to black applicants.

21   4.    Plaintiffs seek declaratory and injunctive relief, disgorgement and restitution of
22   monies disparately obtained from black borrowers.

### JURISDICTION AND VENUE

24   5.    Plaintiffs invoke the jurisdiction of this Court pursuant to 28 U.S.C. §1331, which
25   confers original jurisdiction upon this Court in a civil action arising under federal law. Venue is
26   proper in this Court pursuant to 28 U.S.C. 1391(b) inasmuch as the unlawful discriminatory practice
27   is alleged to have been committed in this District, Defendants regularly conduct business in this
28   District, and defendant Wells Fargo, N.A. maintains its principal place of business in this District.

CLASS ACTION COMPLAINT -                                                    - 1 -

**PARTIES**

6.      Plaintiffs, Nancy and Johnny Jeffries, are black homeowners who reside at 1409 S. Avers Avenue, Chicago, IL 60623.

7.      Defendant Wells Fargo Bank, N.A. is a mortgage lender with a principal place of business at 420 Montgomery Street, San Francisco, CA 94104.

8.      Defendant, Mortgage Direct, Inc. ("Mortgage Direct") is a mortgage broker with a principal place of business at 360 W. Butterfield Road, Suite 230, Elmhurst, IL 60126.

**CLASS ALLEGATIONS**

9.      Plaintiffs repeat and re-allege each and every allegation above as if set forth herein in full.

10.     This class action is brought pursuant to the ECOA and the FHA by the individual named Plaintiffs on behalf of themselves and all black consumers (the "Class") who obtained a Wells Fargo home mortgage loan in the United States between January 1, 2001 and the date of judgment in this action (the "Class Period") and who were subject to Wells Fargo's Discretionary Pricing Policy pursuant to which they paid discretionary points, fees or interest mark-ups in connection with their loan.

11.     Plaintiffs sue on their own behalf and on behalf of a Class of persons under Rules 23(a) and (b)(2) and (b)(3) of the Federal Rules of Civil Procedure. The phrase "Discretionary Pricing Policy" refers to Wells Fargo's policy of authorizing its network of mortgage brokers to impose subjective, discretionary charges and interest mark-ups as part of the finance charges for the loans they originate.

12.     Plaintiffs do not know the exact size or identities of the proposed Class, since such information is in the exclusive control of Defendants. Plaintiffs believe that the Class encompasses many thousands or tens of thousands of individuals who are geographically dispersed throughout the United States.  Therefore, the proposed Class is so numerous that joinder of all members is impracticable.

13.     All members of the Class have been subject to and negatively affected by the same Discretionary Pricing Policy.  There are questions of law and fact that are common to the Class, and

CLASS ACTION COMPLAINT -

- 2 -

1    predominate over any questions affecting only individual members of the Class.  These questions
2    include, but are not limited to, the following:

3              (a)      the nature, scope and operations of  Wells Fargo's Discretionary Pricing
4    Policy;

5              (b)      whether Wells Fargo is a creditor under the ECOA because, for example, in
6    the ordinary course of business they participate in the decision of whether or not to extend credit to
7    consumers;

8              (c)      whether Wells Fargo's Discretionary Pricing Policy is a facially neutral credit
9    pricing system that has effected racial discrimination in violation of the ECOA;

10              (d)      whether there are statistically significant disparities, specifically unrelated to
11    creditworthiness, between the amount of the discretionary charges imposed on black persons and the
12    amount of the discretionary charges imposed on white persons;

13              (e)      whether any legitimate business reason for the Discretionary Pricing Policy
14    can be  achieved by a credit pricing system less discriminatory in its impact;

15              (f)      whether the Court can enter declaratory and injunctive relief; and

16              (g)      the proper measure of disgorgement or damages.

17        14.      The claims of the individual named Plaintiffs are typical of the claims of the Class
18    and do not conflict with the interests of any other members of the Class in that both the Plaintiffs and
19    the other members of the Class were subject to the same Discretionary Pricing Policy that has
20    disproportionately affected black homeowners.

21        15.      The individual named Plaintiffs will fairly and adequately represent the interests of
22    the Class.  They are committed to the vigorous prosecution of the Class' claims and have retained
23    attorneys who are qualified to pursue this litigation and have experience in class actions – in
24    particular, consumer protection and discrimination actions.

25        16.      A class action is superior to other methods for the fast and efficient adjudication of
26    this controversy.  A class action regarding the issues in this case does not create any problems of
27    manageability.

28

CLASS ACTION COMPLAINT -

1    17.    In the alternative, Wells Fargo has acted or refused to act on grounds generally

2    applicable to the case, thereby making appropriate final injunctive relief or corresponding

3    declaratory relief with respect to the Class as a whole.

### ALLEGATIONS OF CLASS-WIDE DISCRIMINATION

5    18.    Wells Fargo is one of the largest mortgage-lending companies in the United States.

6    Wells Fargo publicly promotes its home financing expertise by means of nationwide advertising

7    campaigns.  In its advertisements, Wells Fargo solicits persons to apply for financing with Wells

8    Fargo either in one of its 2,400 locations or through one of the mortgage brokers whom Wells Fargo

9    has authorized to accept applications on its behalf.

10    19.    Wells Fargo makes home-mortgage loans directly to consumers through its mortgage

11    branches, which, according to Wells Fargo, include over 10,000 mortgage specialists at more than

12    2,400 locations.

13    20.    Wells Fargo also makes home-mortgage loans that are arranged by its network of

14    mortgage brokers.  Those loans are made in reliance on Wells Fargo's policies and with the

15    participation of Wells Fargo.

16    21.    Due to Wells Fargo's policies as to how to market its products, black borrowers are

17    more likely than white borrowers to apply for credit from Wells Fargo's network of mortgage

18    brokers.

19    22.    Because of the Discretionary Pricing Policy, loans obtained from Wells Fargo's

20    network of mortgage brokers are more expensive, on average, than loans obtained directly from

21    Wells Fargo.

22    23.    Based on the latest available Home Mortgage Disclosure Act ("HMDA") data,

23    available from the Department of Housing and Urban Development ("HUD"), blacks who borrow

24    from Wells Fargo are nearly 5 times more likely than whites to have received a high-APR loan to

25    purchase a home and more than 3.5 times more likely to have received a high-APR to refinance their

26    home.

27    24.    A high-APR loan is a loan whose APR is at least three percentage points higher than

28    the interest rate on U.S. Treasury securities of the same maturity, at the time the loan was made.

CLASS ACTION COMPLAINT -

- 4 -

25.    While credit differences may explain a small portion of the disparities in rate and terms, Wells Fargo's Discretionary Pricing Policy accounts for a significant portion of the disparity.

26.    Wells Fargo's Discretionary Pricing Policy is unrelated to a borrower's objective credit characteristics such as credit history, credit score, debt-to-income ratio and loan-to-value ratios. Rather, Wells Fargo's Discretionary Pricing Policy results in purely subjective charges that affect the rate otherwise available to borrowers.

27.    Wells Fargo further provides authorized mortgage brokers with substantial information about its loan programs, rates and credit criteria, as well as its policies for compensating mortgage brokers who arrange business for it.

28.    Wells Fargo authorizes mortgage brokers who have signed a contract with it to accept applications on its behalf, quote financing rates and terms (within the limitations set by Wells Fargo), inform credit applicants of Wells Fargo's financing options and to originate finance transactions using Wells Fargo's forms, in accordance with its policies.

29.    In all of the home-mortgage-finance-transactions at issue, Wells Fargo advances the funds to make the loans and bears some or all of the risk of default. Wells Fargo provides its brokers with credit applications, loan contracts and other required financing forms, as well as instructions on filling out such documents necessary to complete home mortgage transactions.

30.    After a customer provides credit information to one of Wells Fargo's brokers, Wells Fargo computes a financing rate through an objective credit analysis that, in general, discerns the creditworthiness of the customer.

31.    These credit analyses consider numerous risk-related variables of creditworthiness, including credit bureau histories, payment amounts, debt ratio, bankruptcies, automobile repossessions, charge-offs, prior foreclosures, payment histories, credit scores, debt-to-income ratios, loan-to-value ratios and other risk-related attributes or variables. On information and belief, Wells Fargo uses these variables to determine a "mortgage score" for each credit applicant.

32.    Based on these objective risk-related variables and the resulting mortgage score, Wells Fargo derives a risk-based financing rate at which it would provide a home mortgage, often

CLASS ACTION COMPLAINT -

1    called the "Par Rate." Alternatively, experienced Wells Fargo brokers can estimate the risk-related

2    Par Rate by referring to the applicant's credit bureau determined credit score.

3        33.    Although Wells Fargo's initial analysis applies objective criteria to calculate this risk-

4    related Par Rate, Wells Fargo then authorizes a subjective component in its credit pricing system -

5    the Discretionary Pricing Policy - to impose additional non-risk charges. On information and belief,

6    the applicable Par Rates and authorized discretionary charges are communicated by Wells Fargo to

7    its broker network through rate sheets.  Such rate sheets are published by Wells Fargo via intranet

8    and/or internet.

9        34.    The discretionary charges are paid by the customer as a component of the total

10   finance charge (the "Contract APR"), without the homeowner knowing that a portion of their

11   Contract APR is a non-risk-related charge.

12       35.    Mortgage brokers have discretion, within the limits set by Wells Fargo, to impose

13   discretionary mark-ups as additional points in interest – "a rate mark-up".  When there is a rate

14   mark-up, Wells Fargo shares the additional income, even if the loan is originated by a broker.

15       36.    Wells Fargo's Discretionary Pricing Policy, by design, causes persons with identical

16   or similar credit scores to pay different amounts for the cost of credit.  As a result of using a

17   subjective pricing component that is designed to charge persons with the same credit profiles

18   different amounts of finance charges, the objective qualities of the initial credit analysis used to

19   calculate the Par Rate are undermined and the potential for race bias becomes inherent in the

20   transaction.

21       37.    The Discretionary Pricing Policy, although facially neutral (insofar as Wells Fargo

22   uses the same or effectively the same policy for all credit applicants), has a disproportionately

23   adverse effect on blacks compared to similarly situated whites in that blacks pay disparately more

24   discretionary charges (both in frequency and amount) than similarly situated whites.

25       38.    Statistical analysis of discretionary charges imposed on black and white customers of

26   other mortgage companies that use credit pricing systems structured like those of Wells Fargo has

27   revealed that blacks, after controlling for credit risk, are substantially more likely than similarly

28   situated whites to pay such charges.

CLASS ACTION COMPLAINT -

1  39.    Wells Fargo's mortgage brokers are agents of Wells Fargo for the purpose of setting

2  credit price, which is always set based on Wells Fargo's policy.

3  40.    The disparate impact suffered by blacks is a direct result of Wells Fargo's

4  Discretionary Pricing Policy in that Wells Fargo designed, disseminated, controlled, implemented

5  and profited from the Discretionary Pricing Policy creating the disparate impact.

6  41.    Wells Fargo has a non-delegable duty to ensure that its mortgage financing structure

7  and policies do not have a disparate impact on legally protected classes, such as blacks. Despite

8  having such a non-delegable duty, Wells Fargo chose to use, and on information and belief,

9  continues to use, a commission-driven, subjective pricing policy that it knows or should have known

10  has a significant and pervasive adverse impact on black homeowners.

11  42.    The disparities between the mortgage terms of Wells Fargo's transactions involving

12  black homeowners and the terms involving whites homeowners cannot be a product of chance and

13  cannot be explained by factors unrelated to race, but, instead, are the direct causal result of the use of

14  the discriminatory Discretionary Pricing Policy.

15  43.    There are no legitimate business reasons justifying Wells Fargo's discriminatory

16  Discretionary Pricing Policy that could not be achieved by a policy that has no discriminatory impact

17  or a vastly reduced discriminatory impact.

18  <center>**ALLEGATIONS OF NON-DISCLOSURE –
**FRAUDULENT CONCEALMENT**
(TOLLING)**</center>

19

20  44.    Commission-driven, discretionary pricing systems – such as those in the real estate

21  mortgage industry that are structurally similar to the system utilized by Wells Fargo – have been

22  found to produce significant discriminatory effects. Knowledge concerning the significant and

23  pervasive discriminatory impact of such commission-driven, discretionary credit pricing systems has

24  been widely circulated throughout the financing industry for several years, particularly since 1994,

25  as a result of numerous high profile actions by the United States Department of Justice and federal

26  regulatory agencies. Wells Fargo, as one of the largest mortgage companies in the United States, has

27  known or should have known that its credit pricing system causes blacks to pay Defendants more for

28  mortgage financing than the amounts paid by white customers with identical or effectively identical

CLASS ACTION COMPLAINT -                                                        - 7 -

1   credit scores. The following various regulatory settlements involved discriminatory pricing policies

2   structurally similar to Wells Fargo's pricing policy and were widely reported through the financing

3   industry:

4       *United States v. Blackpipe State Bank*, Civ. Act. No. 93-5115 (D. S.D. filed
        November 16, 1993)(charging American Indians higher interest rates)
5

6       *United States v. First National Bank of Vicksburg*, No. 5:94 CV 6(B)(N) (S.D. Miss.
        filed Jan. 21, 1994) (charging African-Americans higher interest rates)

7       *United States v. Huntington Mortgage Co.*, No. 1:95 CV 2211 (N.D. Ohio filed
        October 18, 1995)(charging African-Americans higher fees)
8

9       *United States v. Security State Bank of Pecos*, No. SA 95 CA 0996 (W.D.Tex. filed
        October 15, 1995)(charging Hispanics higher interest rates)

10      *United States v. First National Bank of Gordon*, No. CIV-96-5035 (W.D.S.D. filed
        April 15, 1996)(charging American Indians higher interest rates)
11

12      *United States v. Fleet Mortgage Corp.*, No. 96-2279 (E.D.N.Y. filed May 7,
        1996)(charging African-Americans and Hispanics higher interest rates)

13      *United States v. Long Beach Mortgage Co.*, No. CV-96-6159 (C.D. Cal. filed Sept. 5,
        1996)(charging African-Americans, Latinos, women and persons over age 55 higher
14      interest rates)

15      45.    Despite the fact that Wells Fargo has known or should have known of the

16   discriminatory effect of its credit pricing policy, none of the loan documents inform the customer

17   that its finance rates are subjective and not based solely on risk-related characteristics.

18      46.    Although, pursuant to Wells Fargo's Discretionary Pricing Policy, the final credit rate

19   that a customer pays for credit is subjective, Wells Fargo's advertisements, marketing materials and

20   financing documents universally create and foster the image that Wells Fargo offers non-negotiable,

21   competitive finance rates that are objectively set by Wells Fargo based on credit-risk factors.

22      47.    Despite spending millions of dollars annually on advertising, marketing materials,

23   and the creation and distribution of Wells Fargo financing documents that falsely create and foster

24   the image that Wells Fargo offers competitive rates that are objectively set, Defendants never

25   disclose the truth to their credit applicants concerning the fact that: (a) their credit rates are

26   subjective and can vary significantly among persons with identical credit profiles, and (b) that they

27   have authorized and provided a financial incentive to mortgage brokers to subjectively increase the

28   credit rate above the rate otherwise available to homeowners.

CLASS ACTION COMPLAINT -

- 8 -

48.    Wells Fargo's black customers, due to the inherent nature of Wells Fargo's undisclosed pricing system and due to Wells Fargo's deception and concealment, have no way of knowing or suspecting: (a) the existence of Wells Fargo's subjective credit pricing policy; (b) that they were charged additional subjective credit charges; and (c) that they were charged a disproportionately greater amount for their cost of credit than similarly situated white persons.

## FACTUAL ALLEGATIONS

### Facts Relating to Plaintiffs Nancy and Johnny Jeffries

49.    Nancy and Johnny Jeffries (the "Jeffries"), are black homeowners who reside at 1409 S. Avers Avenue, Chicago, IL 60623.

50.    The Jeffries refinanced their Chicago home on April 28, 2006 with a loan arranged by Mortgage Direct.

51.    The lender in the transaction was Wells Fargo Bank, N.A.

52.    The April 28, 2006 refinance transaction (Loan No. 0151568789) was a 30-year, adjustable rate loan with a disclosed APR of 8.875%. The principal loan amount was $335,700.00.

53.    According to the HUD-One Settlement Statement, the Jeffries paid $8912.50 in settlement charges to Mortgage Direct in connection with their loan, including, a $4,392.50 broker fee and $520.00 in processing and courier fees. The broker fee, which was paid outside closing, represented a 2.65% yield spread premium.

54.    Then, on August 1, 2006, the Jeffries – once again – refinanced their home with a loan arranged by Mortgage Direct.

55.    The lender in the transaction was Wells Fargo Bank, N.A.

56.    The August 1, 2006 refinance transaction (Loan No. 0154254924) was a 30-year, adjustable rate loan with a disclosed APR of 10.950%. The principal loan amount was $354,350.00.

57.    According to the HUD-One Settlement Statement, the Jeffries paid $11,450.5 in settlement charges to Mortgage Direct in connection with their loan, including, a $10,630.50 broker fee and $820 in application, processing and courier fees. The broker fee, which was paid outside closing, represented a 3% yield spread premium.

CLASS ACTION COMPLAINT -

58.    On information and belief, unbeknownst to the Jeffries, the contract APR on the mortgage loans was actually a combination of an objective, risk-based calculation and a totally subjective, discretionary component added pursuant to Wells Fargo's Discretionary Pricing Policy.

59.    On information and belief, the Jeffries were subject to Wells Fargo's Discretionary Pricing Policy.

60.    On information and belief, the Jeffries were charged a disproportionately greater amount in non-risk-related credit charges and fees than similarly situated white persons.

**COUNT I**
**(Discrimination In Violation of the Equal Credit Opportunity Act**
**Against All Defendants Except Summit By Plaintiffs on Behalf of The Class)**

61.    Plaintiffs repeat and reallege every allegation above as if set forth herein in full.

62.    Wells Fargo is a creditor as defined in the ECOA, and in the ordinary course of its business, participated in the decision of whether or not to extend credit to the Plaintiffs, the proposed Class representatives herein, and all prospective Class members.

63.    Wells Fargo designed, disseminated, controlled, implemented and profited from the discriminatory policy and practice alleged herein – the Discretionary Pricing Policy – which has had a disparate economic impact on blacks compared to similarly situated whites.

64.    All actions taken by the Wells Fargo's employees and Wells Fargo brokers were in accordance with the specific authority granted to them by Wells Fargo and were in furtherance of Wells Fargo's policies and practices.

65.    As a result of Wells Fargo's Discretionary Pricing Policy, Wells Fargo has collected more in finance charges from blacks than from similarly situated white persons, for reasons totally unrelated to credit risk.

66.    Wells Fargo's Discretionary Pricing Policy violates the ECOA.

67.    Plaintiff and prospective Class members are aggrieved persons as defined in the ECOA by virtue of having been subject to the discriminatory Discretionary Pricing Policy.

**COUNT II**
**(Discrimination in Violation of the Fair Housing Act**
**Against all Defendants Except Summit by Plaintiffs on Behalf of the Class)**

68.    Plaintiffs repeat and reallege every allegation above as if set forth herein in full.

CLASS ACTION COMPLAINT -

- 10 -

69.    Wells Fargo engaged in residential real estate-related transactions with respect to the Plaintiffs, the proposed Class representatives herein, and all prospective Class members.

70.    Wells Fargo's Discretionary Pricing Policy has resulted in discrimination with respect to the Plaintiffs, the proposed Class representatives herein, and all prospective members of the Class.

71.    As a result of Wells Fargo's Discretionary Pricing Policy, Wells Fargo has collected more in finance charges from blacks than from similarly situated white persons, for reasons totally unrelated to credit risk.

72.    Wells Fargo's Discretionary Pricing Policy violates the FHA and constitutes actionable discrimination on the basis of race.

73.    Plaintiff and the Class are aggrieved persons as defined in the FHA by virtue of having been subject to the discriminatory Wells Fargo's Discretionary Pricing Policy.

**COUNT III**
**(Discrimination in Violation of the Equal Credit Opportunity Act**
**Against Mortgage Direct by Plaintiffs Nancy and Johnny Jeffries**
**on Behalf of Themselves, Individually)**

74.    Plaintiffs repeat and reallege every allegation above as if set forth herein in full.

75.    Mortgage Direct is a creditor as defined in the ECOA, and in the ordinary course of its business, participated in the decision of whether or not to extend credit to the Plaintiffs.

76.    The Jeffries are members of a protected class.

77.    Following their credit application, Mortgage Direct discriminated against the Jeffries by charging them discretionary fees in amounts in excess of fees they charged similarly situated white borrowers.

78.    Mortgage Direct's conduct violates the ECOA.

79.    The Jeffries are aggrieved persons as defined in the ECOA by virtue of having been subject to this disparate treatment.

**COUNT IV**
**(Discrimination in Violation of the Fair Housing Act**
**Against Mortgage Direct by Plaintiffs Nancy and Johnny Jeffries**
**on Behalf of Themselves, Individually)**

80.    Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

CLASS ACTION COMPLAINT -

- 11 -

81.    Mortgage Direct engaged in residential real estate-related transactions with respect to the Jeffries.

82.    The Jeffries are members of a protected class.

83.    Following their credit application, Mortgage Direct discriminated against the Jeffries by charging them discretionary fees in amounts in excess of fees they charged similarly situated white borrowers.

84.    Mortgage Direct's conduct violates the FHA.

85.    The Jeffries are aggrieved persons as defined in the FHA by virtue of having been subject to this disparate treatment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

*On behalf of the Class:*

A.    Certify this case as a class action and certify the named Plaintiffs herein to be adequate Class representative and their counsel to be Class counsel;

B.    Enter a judgment, pursuant to 15 U.S.C. 1691e(c) and/or 42 U.S.C. §3613, declaring the acts and practices of Defendants complained of herein to be in violation of the ECOA and the FHA;

C.    Grant a permanent or final injunction, pursuant to 15 U.S.C. 1691e(c) and/or 42 U.S.C. §3613(c), enjoining Defendants, and Defendants' agents and employees, affiliates and subsidiaries, from continuing to discriminate against Plaintiffs and the members of the Class because of their race through further use of the Discretionary Pricing Policy or any non-risk-related Discretionary pricing policy employed by Defendants;

D.    Order Defendants, pursuant to 15 U.S.C. §1691e(c) and/or 42 U.S.C. §3613(c), to adopt and enforce a policy that requires appropriate training of Defendants' employees, mortgage specialists and their network of mortgage brokers to prevent discrimination;

E.    Order Wells Fargo, pursuant to 15 U.S.C. §1691e(c) and/or 42 U.S.C. §3613(c), to monitor and/or audit the racial pattern of its financings to ensure the cessation of discriminatory effects in its home mortgage transactions;

CLASS ACTION COMPLAINT -

- 12 -

1    F.    Order disgorgement, pursuant to 15 U.S.C. §1691e (c), of all disproportionate non-

2    risk charges imposed on blacks by Defendants' Discretionary Pricing Policy; and order the equitable

3    distribution of such charges, as restitutionary relief, to all appropriate Class members;

4    G.    Order actual and punitive damages to the Plaintiffs and the Class pursuant to 42

5    U.S.C. §3613(c);

6    H.    Award Plaintiffs the costs of this action, including the fees and costs of experts,

7    together with reasonable attorneys' fees, pursuant to 15 U.S.C. §1691e(d) and/or 42 U.S.C.

8    §3613(c); and

9    I.    Grant Plaintiffs and the Class such other and further relief as this Court finds

10    necessary and proper.

11    *On behalf of the Jeffries:*

12    J.    Order actual and punitive damages to the Jeffries pursuant to 42 U.S.C. §3613(c);

13    K.    Award the Jeffries the costs of this action, including the fees and costs of experts,

14    together with reasonable attorneys' fees, pursuant to 15 U.S.C. §1691e(d) and/or 42 U.S.C.

15    §3613(c); and

16    L.    Grant the Jeffries such other and further relief as this Court finds necessary and

17    proper.

18    **JURY TRIAL DEMANDED**

19    Plaintiffs demand a trial by jury on all issues so triable.

20    DATED: July 27, 2007

LERACH COUGHLIN STOIA GELLER
21    RUDMAN & ROBBINS LLP
SHAWN A. WILLIAMS
22

23

24    SHAWN A. WILLIAMS

25    100 Pine Street, 26th Floor
San Francisco, CA 94111
26    Telephone: 415/288-4545
415/288-4534 (fax)

27

28

CLASS ACTION COMPLAINT -

1
2               SAMUEL H. RUDMAN
              ROBERT M. ROTHMAN
3               MARK S. REICH
              LERACH COUGHLIN STOIA GELLER
4                 RUDMAN & ROBBINS LLP
              58 South Service Road, Suite 200
5               Melville, NY  11747
              Telephone:  631/367-7100
6               631/367-1173 (fax)

7               RODDY KLEIN & RYAN
              Gary Klein (BBO # 560769)
8               Shennan Kavanagh (BBO # 655174)
              Gillian Feiner (BBO # 664152)
9               727 Atlantic Avenue
              Boston, MA  02111-2810
10              Telephone:  617/357-5500 ext. 15
              617/357-5030 (fax)

11
12               MILLER LAW LLC
              MARVIN A. MILLER
              MATTHEW E. VANTINE
13               LORI A. FANNING
              115 South Lasalle Street, Suite 2910
14              Chicago, IL  60603
              Telephone:  312/332-3400
15
16               HAGENS BERMAN SOBOL SHAPIRO LLP
              THOMAS M. SOBOL (BBO # 471770)
              GREGORY MATTHEWS (BBO # 653316)
17               One Main Street, 4th Floor
              Boston, MA 02142
18               Telephone: 617/475-1950
              617/482-3003 (fax)
19   T:\CptDraft\wellsfargo.cpt.doc
              **Attorneys for Plaintiffs**
20
21
22
23
24
25
26
27
28

CLASS ACTION COMPLAINT -